# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br><br>v.<br><br>Robert John Ferriera,<br><br>        Defendant. | Case No. 17-cr-232 (SRN/LIB)<br><br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Benjamin Bejar, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff.

Douglas Olson, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, Minnesota 55415, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant's Objection [Doc. No. 45] to Magistrate Judge Leo I. Brisbois's January 17, 2018 Report and Recommendation [Doc. No. 42], which recommended that Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 23] and Defendant's Motion to Suppress Statements, Admissions and Answers [Doc. No. 24] be denied.  For the following reasons, the Court overrules Defendant's Objection and adopts the Report and Recommendation in its entirety.

1

## II.    BACKGROUND

Defendant was indicted on one count of possession of an unregistered firearm, one count of being a felon in possession of a firearm, and one count of being a felon in possession of ammunition.  (Indictment [Doc. No. 1] at 1.)  The charges arose from Wadena County Police searches of Defendant and his apartment after police received a complaint that Defendant possessed a short-barrel shotgun.  (Report and Recommendation [Doc. No. 42] ("R&R") at 2.)  At the motions hearing on November 7, 2017, the Magistrate Judge heard testimony from Sergeant Brandon Pearson and Officer Nate Warner of the Wadena County Police, and Defendant.  (*Id.* at 1.)

The R&R thoroughly sets forth the background of this case, and the Court incorporates the R&R by reference and recites facts only to the extent necessary to rule on Defendant's objections. Briefly stated, on July 3, 2017, Sgt. Pearson reported to the police station to speak with a complainant who had come to the station to report an incident.  (*Id.* at 2.)  Upon meeting the complainant, Sgt. Pearson recorded her name, phone number, and other contact information, before taking her recorded statement.  (*Id.*)

The complainant had recently come from Defendant's apartment, where she had been attempting to retrieve a bicycle and collect a debt on behalf of a third party.  (*Id.*) When she asked Defendant about the items, he became agitated and retrieved a "short shotgun," removed it from its holster, broke it open at the action, loaded a shell from his pocket into the gun, and closed it.  (*Id.* at 2–3.)  Defendant then waved the gun around and told the complainant that he used the gun when he felt he or his family were being threatened.  (*Id.* at 3.)  The complainant told Defendant that she was scared, after which

2

he apologized, unloaded the gun, and put it away. (*Id.*) The complainant subsequently left the apartment and drove directly to the police station, which was a block away, to report the incident. (*Id.*)

After hearing the complaint, Sgt. Pearson believed Defendant could be in unlawful possession of a short-barrel shotgun and that his interaction with the complainant could have been a second degree assault involving a firearm. (*Id.*) Sgt. Pearson notified other officers of the complaint, and then called Defendant, with whom he was already familiar, on his cellphone. (*Id.*) Over the phone, Sgt. Pearson asked Defendant if he would speak with him, and Defendant agreed. (*Id.*)

Sgt. Pearson and Officer Warner drove to Defendant's apartment in separate vehicles. (*Id.*) Outside the apartment, Sgt. Pearson told Defendant about the complaint, and asked to search Defendant's apartment. (*Id.* at 4.) Defendant denied having the gun and denied Sgt. Pearson's request to search his apartment. (*Id.*) According to the officers, Sgt. Pearson then asked Defendant to accompany him to Officer Warner's car, and Defendant voluntarily complied. (*Id.*) At Officer Warner's car, Sgt. Pearson told Defendant he would have to wait in the squad car, but that the officers would first have to perform a pat-down search. (*Id.*)

Sgt. Pearson patted Defendant's pants pocket and felt a hard, cylindrical object that he believed could be a weapon. (*Id.*) After Sgt. Pearson removed the object, he found that it was a yellow 20-gauge shotgun shell. (*Id.*) Upon discovering the shell, Sgt. Pearson told Defendant to wait in the squad car while the officers obtained a search warrant for Defendant's apartment. (*Id.*) According to the officers, Defendant responded

"that won't be necessary" because he would show the officers where the shotgun was located in the apartment. (*Id.* at 5.) He then said he had initially lied about having the shotgun, explained that he took it from a gang member in California, and said he knew he was not allowed to possess firearms. (*Id.*)

According to the officers, Defendant led them into the apartment and directed Sgt. Pearson to the bedroom where the shotgun was hidden under the bed linens. (*Id.*) After recovering the gun, Sgt. Pearson asked if there was any ammunition, at which point Defendant silently retrieved a black cloth bag filled with more shotgun shells. (*Id.*) The officers informed Defendant he would have to come with them to the Wadena County Jail, but they first allowed him to secure his apartment. (*Id.*) Defendant accompanied the officers over to another deputy who had arrived, where he was placed in handcuffs and informed he was under arrest. (*Id.* at 6.)

Defendant's testimony differed substantially from that of the officers. In brief, he testified that he was handcuffed by Sgt. Pearson during their initial conversation, before he was searched. (*Id.*) After finding the shotgun shell, the officers said they were getting a warrant, then returned five to ten minutes later waving a piece of paper in Defendant's face, said "got it" and "mumbled something" about Defendant's dog. (*Id.*) Defendant was concerned that the officers would shoot his dog when they entered the apartment, and requested to accompany them in order to hold his dog. (*Id.*) According to Defendant, he was handcuffed the entire time, and he believed the officers had a warrant and therefore he never consented to the search. (*Id.*)

On October 13, 2017, Defendant moved to suppress the shotgun, the bag of

ammunition, and the single shotgun shell from his pocket. (Def.'s Mot. to Suppress Evidence [Doc. No. 23] at 1.) He also moved to suppress all his statements, admissions, and answers made prior to, at the time of, or subsequent to his arrest. (Def.'s Mot. to Suppress Statements [Doc. No. 24] at 1.) After the November 7 hearing, the parties submitted supplemental briefing [Docs. No. 34, 39]. The Magistrate Judge issued his R&R on January 17, 2018. In the R&R, he considered all the testimony and determined that the officers' story was more credible. (R&R at 9.) After analyzing the officers' conduct, he recommended that Defendant's motions to suppress be denied, reasoning that in view of the totality of the circumstances, the officers possessed reasonable suspicion that Defendant was armed and dangerous, that Defendant consented to the officers' search of his apartment, and that his statements to police were spontaneous and voluntary. (*Id.* at 16, 24–25, 32.)

## III.    DISCUSSION

### A.    Standard of Review

The district court reviews de novo those portions of the R&R to which an objection is made, and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b).

### B.    Defendant's Objections

Defendant objects that the physical evidence against him should be suppressed because it was obtained as a result of an illegal search of his person and an accompanying illegal seizure of the shotgun shell in his pocket, as well as a subsequent illegal search of

his apartment to which he did not voluntarily consent.  (Def.'s Obj. at 1.)  In particular, he objects that the officers did not have reasonable suspicion sufficient to conduct a *Terry* stop or a pat down, and that the seizure of the shotgun shell exceeded the permissible scope of the stop because it was not immediately apparent that the object in his pocket was a weapon.  (*Id.*)  Furthermore, he alleges that he did not consent to the officers' search of his apartment, or that any alleged consent was the result of the preceding illegal conduct, and that the Government failed to carry its burden of showing voluntariness. (*Id.*)

Finally, he objects that any incriminating statements resulted from the illegal searches and seizures, and in addition, from an un-*Mirandized* custodial interrogation. (*Id.*)  Accordingly, Defendant concludes that all the evidence should be suppressed because it was obtained as a result of a series of constitutional violations.  (*Id.*)

### C.    Credibility of Testimony

As a preliminary matter, the Court must address the discrepancy between Defendant's testimony and the testimony of the officers. After observing the testimony and reviewing all the evidence, Magistrate Judge Brisbois concluded that the officers independently corroborated each other's testimony, and that their account was credible, whereas Defendant's testimony was not credible.  (R&R at 8.)

Magistrate Judge Brisbois noted that the officers' experience, demeanor, and independent statements supported their version of events, while Defendant's demeanor was "less than straightforward" and his testimony was at times "nonresponsive and narrative."  (*Id.*)  Defendant's testimony partially corroborated the officers' account, and

6

Magistrate Judge Brisbois concluded that the differences could be explained by Defendant's "great deal of self-interest in having the evidence at issue suppressed." (*Id.*); *see also United States v. Gleason*, 25 F.3d 605, 607 (8th Cir. 1994) (finding that an experienced officer's testimony may be given more weight than defendant's where the defendant has a great deal of self-interest at stake). Upon reviewing the record, the Court agrees with Magistrate Judge Brisbois that the officers' testimony is more credible than that of Defendant.

### D.   Initial *Terry* Stop and Pat Down

Defendant's first objection to the R&R is that Sgt. Pearson's conversation and subsequent pat-down search of Defendant constituted an illegal stop-and-frisk because Sgt. Pearson had no information or objective evidence of danger to justify the search. (Def.'s Obj. at 5.) A *Terry* stop requires reasonable suspicion that the individual being stopped is currently engaged in criminal activity, or previously committed a crime. *See United States v. Hughes*, 517 F.3d 1013, 1016 (8th Cir. 2008). An officer conducting a *Terry* stop "who has reason to believe that person may be armed and dangerous, may conduct a pat-down search to protect officer safety." *United States v. Menard*, 95 F.3d 9, 10–11 (8th Cir. 1996). The question is whether "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Sgt. Pearson possessed reasonable suspicion that Defendant had recently committed a crime, and that he might be carrying a weapon, based on the information of

a reliable informant. The informant reported that Defendant had waved a loaded, short-barrel shotgun in front of her in a threatening way just minutes before she entered the station, which was itself just minutes before Sgt. Pearson questioned Defendant. (R&R at 12.) Furthermore, the informant's complaint bore every indicia of reliability: the report was recent, it was detailed and based on firsthand observation, and the informant allowed herself to be identified and her complaint to be recorded. (*Id.* at 12–13.)

The informant's report provided a sufficient basis for Sgt. Pearson to reasonably suspect Defendant had committed a crime and was armed and dangerous. *See United States v. Stevens*, 530 F.3d 714, 719–20 (8th Cir. 2008) (holding that a reliable report from an informant was sufficient for finding probable cause). Sgt. Pearson's suspicion that Defendant could be armed did not dissipate during their conversation, despite Defendant's cooperation, because an officer's right to frisk someone he suspects was involved in a crime of violence is "automatic." *Terry*, 392 U.S. at 33 (Harlan, J., concurring); *see also United States v. Barnett*, 505 F.3d 637, 640 (7th Cir. 2007) ("This objectively reasonable suspicion did not dissipate during the roughly five minutes of questioning leading up to the frisk, regardless of Barnett's 'cordiality' or 'cooperativeness.' The officers' ongoing reasonable suspicion that Barnett committed a crime that likely involved a weapon independently preserved the justification for a protective frisk."). Because Sgt. Pearson had reasonable suspicion that Defendant was armed, the Court agrees with Magistrate Judge Brisbois that the pat-down search was justified and did not violate Defendant's Fourth Amendment rights. (*See* R&R at 14.)

### E.    Seizure of Shotgun Shell

Defendant also objects that Sgt. Pearson exceeded the permissible scope of a *Terry* pat down by reaching inside Defendant's pocket to retrieve the shotgun shell when it was not immediately apparent that the object was a weapon or contraband.  (Def.'s Obj. at 6–7.)  Pat-down searches must be "reasonably designed to discover concealed weapons." *Roggeman*, 279 F.3d at 578.  "An officer may, however, seize nonthreatening contraband detected during a pat-down search for weapons as long as the search itself" stays within the bounds of a *Terry* stop.  *United States v. Hanlon*, 401 F.3d 926, 930 (8th Cir. 2005); *see also United States v. Muhammad*, 604 F.3d 1022, 1027 (8th Cir. 2010) (holding that unidentified object in defendant's pocket "could be a weapon or could conceal a weapon").

The facts of this case are indistinguishable from those in *United States v. Hanlon*, and Magistrate Judge Brisbois was therefore correct in concluding that the seizure of the shotgun shell was justified.  In *Hanlon*, the Eighth Circuit upheld the admission of a vial of methamphetamine found in the defendant's pocket during a pat-down search, because the officer testified that he believed the small object could have been some type of weapon.  *Id.*  Here, Sgt. Pearson testified that he believed the object he felt in Defendant's pocket could be a weapon, and he removed it to ensure it was not a weapon. (R&R at 14.)  Magistrate Judge Brisbois correctly concluded that Sgt. Pearson's seizure of the shotgun shell was permissible under *Terry*.

### F.    Consent to Search Apartment

Defendant objects to Magistrate Judge Brisbois's finding that Defendant

consented to the officers' search of his apartment on two grounds. First, he objects that any consent he arguably gave was tainted by the preceding search and seizure. That objection is foreclosed by the preceding analysis. He also objects, however, that the Government failed to carry its burden of showing Defendant's consent was voluntary. "Although a warrantless search presumptively violates the Fourth Amendment, voluntary consent to search is a well-recognized exception to the warrant requirement." *United States v. Golineveaux*, 611 F.3d 956, 959 (8th Cir. 2010). A defendant's consent is voluntary if the totality of the circumstances "demonstrate that the police reasonably believed the search to be consensual." *United States v. Zamoran-Coronel*, 231 F.3d 466, 469 (8th Cir. 2000).

Defendant voluntarily consented to let the officers search his apartment. Courts look to a number of factors to guide their voluntariness analysis, many of which are listed in the R&R. (R&R at 18); *see United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). The most significant factor in this case is that Defendant did not object to the search through his actions; to the contrary, he was a willing participant. *See United States v. Jones*, 254 F.3d 692, 695 (8th Cir. 2001) ("[T]he precise question is not whether [the defendant] consented subjectively, but whether his conduct would have caused a reasonable person to believe that he consented."); *see also Golineveaux*, 611 F.3d at 959 (listing whether the individual stood silently or objected to the search as a factor). According to the officers, he not only consented to the search, but admitted to having the gun, led the officers into the apartment, told them where the gun was, and turned over a bag of ammunition. (R&R at 23.)

Defendant argues that there are countervailing factors, namely that he was effectively in custody at the point he consented, and that he had not yet been *Mirandized*. (Def.'s Obj. at 11.)   But those factors are countered by the admittedly short duration of any custodial restraint, Defendant's significant prior experience with law enforcement, and his initial refusal to allow the officers to search the apartment.  (R&R at 19–20); *see United States v. Willie*, 462 F.3d 892, 897 (8th Cir. 2006) (holding that defendant's prior invocation of his rights showed understanding of their existence).  Defendant asserts that it is "incredulous" that he would consent to the search after having already refused the request.  (Def.'s Mem. re Obj. [Doc. No. 55] at 11.)  But that assertion is belied by his cooperation with the search as it happened. The Court agrees with Magistrate Judge Brisbois that in view of the totality of the circumstances, and taking into consideration Defendant's personal characteristics and the relevant environmental factors, Defendant voluntarily consented to the officers' search of his apartment.

## G.    Un-*Mirandized* Statements and Admissions

Defendant also objects that the statements he made to the officers after he was searched should be suppressed because he was effectively under arrest and in custody, but was not advised of his *Miranda* rights before making the statements.  (Def.'s Obj. at 12–13.)  After consenting to the search, Defendant admitted that the gun was in his apartment, that he had obtained it from a gang member in California, and that he knew he was not allowed to possess firearms.  (*Id.*)  *Miranda* warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way."  *Stansbury v. California*, 511 U.S. 318, 322

11

(1994). Custodial interrogation includes not only express questioning, but also any word or action that police should know is "reasonably likely to elicit an incriminating response from the subject." *United States v. Hull*, 419 F.3d 762, 767 (8th Cir. 2005). *Miranda* does not, however, "protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers." *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997).

According to the officers, Defendant made his statements immediately after Sgt. Pearson told him to wait in the squad car while the officers retrieved a warrant to search his apartment. (R&R at 27–28.) Sgt. Pearson's statement was neither a question nor a statement "reasonably likely to elicit an incriminating response." Factual statements do not constitute questioning unless they appeal to the conscience or are accompanied by "threats or other coercive pressures." *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005). Sgt. Pearson's statement did not constitute custodial interrogation within the meaning of *Miranda*. The Court therefore agrees with Magistrate Judge Brisbois that Defendant's statements were spontaneous, voluntary admissions, and overrules Defendant's objection. *See United States v. Barnes*, 195 F.3d 1027, 1029 (8th Cir. 1999).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendants' Objection [Doc. No. 45] to the Magistrate Judge's January 17, 2018 Report and Recommendation is **OVERRULED;**

2. The Court **ADOPTS** the Report and Recommendation [Doc. No. 42];

3. Defendants' Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 23] is **DENIED**; and

4.  Defendant's Motion to Suppress Statements, Admissions and Answers [Doc. No. 24] is **DENIED**.


Dated: March 23, 2018                          s/Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge